Next case looks like is People v. Wilson, 08-277. Beanton. Are you ready for fate? Please support the abstentions. I am not as comfortable with my just proceeding. I will give a recitation of facts if you want me to, otherwise I will just include those facts within my argument. The standard of review in this case, since it does involve applying the facts to the law or the law to the facts in this case, the standard of review is de novo in this case. Under Miranda, a person who is taken into custody or otherwise deprived of freedom in a significant way is entitled to be warned of his constitutional rights under the Fifth Amendment. If a person is not in custody, that right or that warning does not apply. Factors to determine whether there is custody for Miranda purposes is listed in several different cases that are cited in our brief. They include the time, place, length, mood and mode of the interrogation, the number of police officers present, any indicia of formal arrest or evidence of restraint. The trial court in this case focused almost entirely, well actually entirely, on the fact that this defendant was the focus of the investigation. He was the one that they suspected of this offense because the victim named him. Also, the trial court relied heavily on the fact that this defendant was born into a military family, served four years himself in the military, and he thought that that had some relevance to this. But the initial determination of custody depends on an objective test of what a reasonable person, innocent of any crime, would feel themselves to be in the defendant's situation. Now in this case, applying those factors to the actual facts in this case, the police did not pull this defendant in off his job after they received the report of the sexual abuse. They talked to the defendant's wife and asked her to relay a request for him to come in and talk to Detective Mullins. The defendant came in after work, in fact drove his work truck to the community center building in which the police department is located. He came in through the front doors and then in after the lobby, it sounds like, the record isn't exactly clear, but it sounds like there's glass doors coming into the community center building, and then there's a door into the police department, and then they went into another room. So there was three doors, but only two of them had to do with the police department. Mr. Fisher, the entire interview was videotaped. Did the trial judge look at the video? He did look at the video, and that is one of the things that I think is very interesting and scans out very clearly what is wrong with his ruling was that the police officers in this case didn't know anything about the defendant having any military background at all until after the interview was almost ready to be concluded, after he had made his statement. And the cases also reject that as a factor to be considered. The court relied on people versus slavery. What's the significance of the military background? The court didn't specifically state. I can only assume that the court thought, well, with an authority figure, he needed to do what the authority figure wanted him to do. And somehow that created more pressure or created a coercive atmosphere. The courts have, Stansberry, especially Yarbrough versus Alvarado, has completely rejected that sort of consideration Was the defendant asked to give his fingerprints or any other kind of forensic evidence? Absolutely not. He was not searched. They didn't take his fingerprints or anything like that. There was no handcuffing. He was told he was free to leave. And in fact, he was told that it didn't matter what he said that day, that he would be leaving and going home. The Detective Mullins told him and the DCFS officer who was present also testified that Detective Mullins told him that This is before he made his statement? Yes. He was told that he was going to be able to leave at the end of this? Yes. No matter what he said, no matter what happened, that he was going home. And that later on, you know, whatever was said would be relayed to the state's attorney and the state's attorney would make up his mind whether any charges were going to be filed and they'd see what happened then. So he knew that he was going to be leaving. He was told several times that he could leave at any time. How old was the defendant? He was 36 years old. Also, I think it's important is that the DVD shows that in the room, Detective Mullins and the DCFS investigator were seated on one side of the table in the room and the defendant was seated on the other side. The side that he was seated at was closest to the door. Detective Mullins went in and out several times, which demonstrated to the defendant that the door was locked. So he could have gotten up and left and he was well aware of that. Although the focus was on the defendant and the police were questioning him because he was named by the victim, nobody raised their voice or otherwise threatened him during the interview. They just encouraged him to tell the truth. And our cases are clear that admonishments to tell the truth do not render a confession inadmissible. So viewed objectively, none of the foregoing would lead a person that was innocent of any crime to believe that he was not free to leave and end the interview and leave the premises. So Miranda was not required in this case. She wasn't required. It could have been given and they could have said, we're going to give you Miranda. We're not going to arrest you today. When this is done, you're going to go home. They could have done that. We wouldn't be here. But it wasn't necessary. So we would ask this court to reverse the trial court's order. Can I ask you, the trial court ruled on January 14th and in your brief you indicate that a motion to reconsider was denied on May 22nd. When was the motion filed? I can't find in your brief when the motion was filed. I have the timeline here. The motion to reconsider was filed on February 13th. Okay. Okay. Are there any other questions?  Thank you. May it please the court. My name is Janet Gandy Fowler and I'm here on behalf of the athlete John Wilson. It is our contention that the trial court properly suppressed John Wilson's statement as a product of a custodial interrogation, an interrogation that was directed for Miranda warnings. Mr. Wilson was not exactly a, not exactly familiar with the criminal justice system. It should be noted that Mr. Wilson had never had a prior conviction, never been in contact with the criminal justice system when he came to the station that day. When he came to the station, he was taken to a room that was inside the police station that the officer admitted. Now was he taken to the station?  Did you say he was taken to the station? No, he was taken. I thought he took himself to the station. He took himself to the station. What I meant to say was he was taken to a room inside the station that was specifically designated as a room for interrogations. Did the police call him up and say come on down? Or how did that communicate? His wife told him. Pardon me? The police told his wife. His wife told him, hey, the police want to come talk to you. So he came after work. The police actually asked the wife to tell him to come. Right. That's correct. But once he got there, he was taken. It wasn't a question like outside or anything. He was taken to a room specifically designated for interrogations. The other problem with saying it's just a conversation or an interview is it was videotaped. It's an evidence gathering mechanism. Someone sitting in this position may wonder why they would want to videotape this at all. They just want to have a conversation with me. Further, the discussion or conversation, as the state would like to call it, took some circumstantial roots in that the officer kept going back and forth after he wasn't getting the right answers from Mr. Wilson. Mr. Wilson denied it initially. If they were interested in trying to pursue something, they would have said, okay, Mr. Wilson, we will not take any more of your time. You can go home. But that's not the case. They came back and said, you're basically, you know, we basically want the truth here. Here's the evidence. You know what the evidence is. You know, if you're a good person, let's try to clear this up. What about the fact that he was told no matter what he said, he was going to leave that day and go home? How are you under arrest if you can go home? You know, that may be, but you have to look at his position. You may not be, well, you know, they want the truth here. I'm not going to be able to, you know, that's fine. But why do I feel at this point? Do I feel like I'm, you know, they're closing in on me? There's case law that's cited in the brief saying that you can tell a person they're free to leave. However, that doesn't vindictive considering the atmosphere surrounding the interrogation. There was no restraint, no handcuffs, no fingerprints, no locked door, no gun on the table. Understood. But I would point out that he was not familiar. He may not have been familiar enough with the criminal justice system to believe, well, you know, maybe I can't leave. I mean, they shut the door. They never, he was afraid to do it because there was something going to happen to him. Not being familiar enough with what was going on. Did he testify to that in the motions of the press? No, he did not. Admittedly, he did not testify. What was his level of education? He was in the military. I'm not so sure how far he went to school. I don't think that was ever brought out. Is the standard what he may have thought subjectively or what a reasonably innocent person would have? I would agree with the reasonably innocent person would think that that, think what he was in. But you have to take into account his background to a certain extent to make that determination. And even determining what a reasonable person would. Right. I think you just can't do it, you know, just in a vacuum. I think you have to take some factors from the situation and make that determination. But given these factors that contribute to the fact that he was involved in custodial interrogation, trial court's suppression that the statement that he gave to the officer should have been suppressed. Thank you. Your rebuttal counsel. Just one point regarding the defendant's inexperience with the criminal justice system. I would just like to stress one more time. The U.S. Supreme Court has rejected that as a factor to be considered in Stansbury v. California, which we cite in our brief, and also in Illinois, People v. Griffin, which is cited in the defendant's brief. I think the main thing is that the subjective view of the police or defendant are not factors that are relevant in this consideration. Any questions? Thank you, counsel. Ladies, we'll take the matter under advisement and get back to you in due course.